1

**GLANCY PRONGAY & MURRAY LLP**
LIONEL Z. GLANCY (#134180)
2
ROBERT V. PRONGAY (#270796)
LESLEY F. PORTNOY (#304851)
3
CHARLES H. LINEHAN (#307439)
1925 Century Park East, Suite 2100
4
Los Angeles, CA 90067
5
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
6
Email: rprongay@glancylaw.com

7
*Counsel for Plaintiff*

8
**UNITED STATES DISTRICT COURT**
9
**NORTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| FREDERIC SAN GIORGI, Individually and On Behalf of All Others Similarly Situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| STITCH FIX, INC., KATRINA LAKE, PAUL YEE, and MIKE C. SMITH, | **JURY TRIAL DEMANDED** |
| Defendants. | |

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Frederic San Giorgi ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Stitch Fix, Inc. ("Stitch Fix" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Stitch Fix; and (c) review of other publicly available information concerning Stitch Fix.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Stitch Fix securities between June 8, 2018 and October 1, 2018, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Stitch Fix purports to be an online retail fashion subscription service. It provides personalized shipments of apparel, shoes, and accessories to clients. Each shipment is called a "Fix." For each Fix, the Company charges clients a styling fee that is credited toward items they purchase.

3.      On October 1, 2018, after the close of trading, the Company reported its financial results for fourth quarter 2018, revealing only 54,000 net active client additions, a decline from 180,000 net additions in the prior quarter.

4.      On this news, the Company's share price fell $15.69 per share, more than 35%, to close at $31.58 per share on October 2, 2018, on unusually high trading volume.

5.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company's active client growth rate was slowing; (2) that Company would cease its television advertising for a significant part of the quarter; (3) that the lack of television advertising would

1   materially impact the Company's active client additions; and (4) that, as a result of the foregoing,

2   Defendants' positive statements about the Company's business, operations, and prospects, were

3   materially misleading and/or lacked a reasonable basis.

4         6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline

5   in the market value of the Company's securities, Plaintiff and other Class members have suffered

6   significant losses and damages.

7   **JURISDICTION AND VENUE**

8         7.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange

9   Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17

10  C.F.R. § 240.10b-5).

11        8.      This Court has jurisdiction over the subject matter of this action pursuant to 28

12  U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

13        9.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and

14  Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the

15  alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts

16  charged herein, including the dissemination of materially false and/or misleading information,

17  occurred in substantial part in this Judicial District. In addition, the Company's principal executive

18  offices are located in this district.

19        10.      In connection with the acts, transactions, and conduct alleged herein, Defendants

20  directly and indirectly used the means and instrumentalities of interstate commerce, including the

21  United States mail, interstate telephone communications, and the facilities of a national securities

22  exchange.

23  **PARTIES**

24        11.      Plaintiff Frederic San Giorgi, as set forth in the accompanying certification,

25  incorporated by reference herein, purchased Stitch Fix securities during the Class Period, and

26  suffered damages as a result of the federal securities law violations and false and/or misleading

27  statements and/or material omissions alleged herein.

28        12.      Defendant Stitch Fix is incorporated under the laws of Delaware with its principal

executive offices located in San Francisco, California.  Stitch Fix's common stock trades on the NASDAQ exchange under the symbol "SFIX."

13.     Defendant Katrina Lake ("Lake") was the Chief Executive Officer of the Company at all relevant times.

14.     Defendant Paul Yee ("Yee") was the Chief Financial Officer of the Company at all relevant times.

15.     Defendant Mike C. Smith ("Smith") was the Chief Operating Officer of the Company at all relevant times.

16.     Defendants Lake, Yee, and Smith, (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.    The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

17.     Stitch Fix purports to be an online retail fashion subscription service. It provides personalized shipments of apparel, shoes, and accessories to clients. Each shipment is called a "Fix." For each Fix, the Company charges clients a styling fee that is credited toward items they purchase.

### Materially False and Misleading
### Statements Issued During the Class Period

18.     The Class Period begins on June 8, 2018. On June 7, 2018, after the close of

trading, the Company issued a press release and letter to shareholders to announce financial results for the third quarter 2018. Therein, the Company, in relevant part, stated:

**Stitch Fix Announces Third Quarter Fiscal 2018 Financial Results**

. . . Stitch Fix, Inc. (NASDAQ:SFIX), the leading online personal styling service, has released its financial results for its third quarter of fiscal year 2018 ended April 28, 2018 and posted a letter to its shareholders on its investor relations website. Highlights include delivering:

Active clients of 2.7 million, an increase of 30% year over year Net revenue of $316.7 million, an increase of ***29% year over year*** Net income of $9.5 million and adjusted EBITDA of $12.4 million Diluted earnings per share of $0.09

"In addition to driving strong net revenue, net income, and adjusted EBITDA, ***we grew our active client count to 2.7 million, an increase of 30% year-over-year,***" said Stitch Fix founder and CEO Katrina Lake. ***"We continue to balance growth and profitability, demonstrated by our ability to consistently deliver top-line growth*** of over 20% even as we invest in category expansions, technology talent, and marketing. ***Our third quarter results demonstrate continued positive momentum*** for Stitch Fix and the power of our unique ability to deliver personalized service at scale."

(Emphases added.)

19.     The shareholder letter, which was posted on the Company's website and filed with the SEC, repeated the Company's claim that it had grown "active clients to 2.7 million as of April 28, 2018," from 2.5 million in second quarter 2018 and from 2.07 million in third quarter 2017, which represented a year-over-year increase of 614,000, or 29.6%.

20.     The shareholder letter further stated that the Company's "Q3'18 advertising spend," which it said then included "the costs associated with the production of advertising, television, radio and online advertising," had "increased relative to [its] Q3'17 expense [to] 8.7% of net revenue." It also stated that the Company "continue[s] to make strategic and measured marketing investments designed to achieve near-term payback."

21.     The same day, defendants Lake, Yee and Smith participated in a conference call with investors and analysts during which they provided additional positive commentary about the Company's 3Q18 financial results and its purportedly ongoing strong business metrics and financial prospects. Defendant Lake stated that Stitch Fix had grown its "active client count to 2.7 million as of April 28, 2018, an increase of 614,000 and 30% year-over-year," and that the "Q3 also marked the fifth consecutive quarter of over 20% year over year top-line growth." She went

on to emphasize that Stitch Fix had "significant opportunities to acquire new clients in [its] existing business," and that the "30% year-over-year growth [it had] seen in active client count [was] the result of [efforts to serve new client groups], efficiently leveraging [its] performance marketing capabilities and increasing [its] brand awareness."

22.     Regarding the impact of the Company's new Men's and Plus-sized client offerings on the growth of active clients, defendant Lake stated that for "Plus directionally," there were "75,000 . . . people that were waiting on the wait list before [the Company] even launched the business," and though she stated Stitch Fix "[would not] be providing the exact numbers, the number of people that [were] benefiting from that service [was] significantly higher than that and certainly continue[d] to grow." She also emphasized that "from a category perspective, Men's [and] Plus size . . . are all great opportunities for us to be able to have many, many paths for long-term growth."

23.     When asked to clarify which categories of active clients contributed to the Company's strong 4Q18 financial guidance, defendant Yee responded that, "from a driver's standpoint, we grew active clients by 30% year-over-year, and that's both for our Women's and Men's categories." He also stated that the Company was "really pleased with efficiencies . . . seen with [its] marketing spend to attract new clients as well as ability to reengage and engage clients with the various tools . . . to really please [its] clients."

24.     On the same day, after the Company's reported its financial results, CNBC aired a segment and published an article repeating Lake's claims of continuing positive momentum in scaling the Company's business:

> Stitch Fix soared after the company reported strong earnings and user growth on Thursday.
>
> Here's how the company did compared to what Wall Street expected:
>
> - Earnings: 9 cents vs. 3 cents forecast by Thomson Reuters
> - Revenue: $316.7 million vs. $306 million forecast by Thomson Reuters
> - Active clients: 2.7 million vs. 2.66 million forecast by StreetAccount
>
> In the year-ago quarter, Stitch Fix reported a loss per share of 38 cents on $245.1 million in revenue.

* * *

CLASS ACTION COMPLAINT
5

Founder and CEO Katrina Lake said the company has been able to post revenue growth without sacrificing investment in the business.

*"Our third quarter results demonstrate continued positive momentum for Stitch Fix* and the power of our unique ability to deliver personalized service at scale," Lake said in a statement.

(Emphasis added.)

25.     On June 8, 2018, the Company filed a quarterly report on Form 10-Q with the SEC for the period ended April 28, 2018 (the "3Q18 10-Q"). The 3Q18 10-Q was signed and certified pursuant to the Sarbanes-Oxley Act of 2002 by defendants Lake and Yee. Regarding the Company's active client growth, the 3Q18 10-Q stated, in relevant part:

*Active Clients*

*We believe that the number of active clients is a key indicator of our growth and the overall health of our business.* We define an active client as a client who checked out a Fix in the preceding 12-month period, measured as of the last date of that period. A client checks out a Fix when she indicates what items she is keeping through our mobile application or on our website. *We had 2,688,000 and 2,074,000 active clients as of April 28, 2018 and April 29, 2017, respectively, representing year-over-year growth of 29.6%.*

(Emphases added.)

26.     Regarding client acquisition and engagement, the 3Q18 10-Q stated, in relevant part:

To grow our business, we must continue to acquire clients and successfully engage them. We believe that implementing broad-based marketing strategies that increase our brand awareness has the potential to strengthen Stitch Fix as a national consumer brand, *help us acquire new clients* and drive revenue growth. As our business has achieved a greater scale and we are able to support a large and growing client base, *we have increased our investments in marketing to take advantage of more marketing channels to profitably acquire clients.* For example, *we recently significantly increased our advertising spend, from $21.3 million and $46.8 million for the three and nine months ended April 29, 2017 to $25.2 million and $73.2 million for the three and nine months ended April 28, 2018, respectively, to support the growth of our business. We expect to continue to make significant marketing investments to grow our business*. We currently utilize both digital and offline channels to attract new visitors to our website or mobile app and subsequently convert them into clients. *Our current marketing efforts include* client referrals, affiliate programs, partnerships, display advertising, *television*, print, radio, video, content, direct mail, social media, email, mobile "push" communications, search engine optimization and keyword search campaigns.

(Emphases added.)

27.     The 3Q18 10-Q reported that "[r]evenue increased by $71.7 million and $189.4

million, or 29.2% and 26.3% during the three and nine months ended April 28, 2018 compared with the same periods last year," noting "[t]he increase in revenue was primarily attributable to a 29.6% increase in active clients from April 29, 2017 to April 28, 2018, which drove increased sales of merchandise."

28.     The 3Q18 10-Q emphasized the importance of the television advertising campaigns to Stitch Fix's sales and promotional efforts, stating that because its "continued growth depend[ed] on attracting new clients," "[s]tarting in calendar year 2017, [it] began to increase [its] paid marketing expenses by investing more in digital marketing and launching [its] first television advertising campaigns." The Form 10-Q also expressly stated that the Company then "expect[ed] to increase [its] spending on these and other paid marketing channels in the future."

29.     On June 19, 2018, CNBC further discussed the Company's 3Q18 earnings in an article titled "Trader: this company could be the Netflix of apparel." The article emphasized the Company's reported 30% year-over-year subscriber growth:

**Trader: this company could be the "Netflix of apparel"**

- Josh Brown, Ritholtz Wealth Management CEO, bought Stitch Fix.
- It "might be the answer" to apparel companies that have had trouble building their online businesses, he said on Monday's "Halftime Report"
- ***The company topped Q3 analyst estimates when it reported earnings on June 7, and noted that active clients grew 30% compared to a year earlier.***

On Monday Ritholtz Wealth Management CEO and "Halftime Report" trader Josh Brown bought Stitch Fix since he believes it could become the "Netflix of apparel."

The San Francisco-based company is a clothing subscription service. Users fill out a style profile online and then receive a package with personally-curated clothing and accessories from the company. Subscribers can decide what they would like to buy from the box, and they can return the remaining items free of charge.

As e-commerce growth accelerates and traditional retailers struggle to keep up, Brown believes Stitch Fix could be a bright spot in the sector.

"If you look at the trouble the apparel companies have had building an online business fast enough to offset the decline in foot traffic Stitch Fix might be an answer," he said on Monday's "Halftime Report." "It may become the Netflix of apparel."

***Brown also likes the fundamentals of the company. He noted that it is "growing its user base by an outstanding number" and that it's also showing accelerating revenue. "I think they found a way to build a business in apparel online that just absolutely delights their customers," he said.***

Stitch Fix went public on November 17, 2017, and shares are up 81% since through Monday's close. ***The company most recently reported quarterly results on June 7 that topped analyst estimates for both earnings and revenue, and the number of subscribers grew 30% in Q3 compared to a year earlier. The stock has soared 33% since the company announced results.***

(Emphases added.)

30.     On July 15, 2018, defendant Lake presented for Stitch Fix on NBC's Today show. A video link to the segment remained on the Company's website throughout the Class Period. Lake explained how she had launched Stitch Fix with just 29 customers, with NBC digitally displaying the number rapidly growing to 2.7 million active clients. As a result, it was stated that Stitch Fix was then "worth about two billion dollars." Asked whether business had been negatively impacted by the new Amazon.com Prime Wardrobe service rolled out earlier in 2018, which similarly "ship[s] customers clothes to try before they buy," Lake claimed that it had not impacted the business, emphasizing that "[t]he hardest part is that there's a million pairs of jeans out there literally and which ones are going to be the best ones for your body. And that's actually the hardest part to solve and we don't see anybody else doing that."

31.     The above statements identified in ¶¶18-30 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that the Company's active client growth rate was slowing; (2) that Company would cease its television advertising for a significant part of the quarter; (3) that the lack of television advertising would materially impact the Company's active client additions; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

## **Disclosures at the End of the Class Period**

32.     On October 1, 2018, after the close of trading, the Company issued a press release to announce its financial results for the year ended July 28, 2018. The Company, in relevant part, stated:

**Fourth quarter highlights**

- Active clients of 2.7 million, an increase of 25% year over year

- Net revenue of $318.3 million, an increase of 23% year over year
- Net income of $18.3 million and adjusted EBITDA of $11.1 million
- Diluted earnings per share of $0.18

**Full year highlights**

- Net revenue of $1.2 billion, an increase of 26% year over year
- Net income of $44.9 million and adjusted EBITDA of $53.6 million
- Diluted earnings per share of $0.34

"Q4 was another strong quarter for us," said Stitch Fix Founder and CEO, Katrina Lake. "We grew our active client count 25% year over year and delivered $318.3 million in net revenue and $11.1 million in adjusted EBITDA. . . ."

33.     The same day, defendants Lake, Yee and Smith participated in a conference call with investors and reported that the Company's active client growth rate had already dramatically declined. The active client count remained at 2.7 million, which was an increase of 548,000, or 25%, year-over-year, but only 54,000 quarter-over-quarter.

34.     During the call, defendant Smith explained that the Company had decided to "temporarily cease[] [its] national TV campaign for 10 weeks" during the 13 weeks of the fourth quarter, purportedly to "measure channel efficacy." He conceded that the decision had had a negative impact on new client growth during the quarter, acknowledging that defendants had "learned that TV was a more effective acquisition channel than [they] had previously modeled as measured on a cost per acquisition basis."

35.     When asked whether television advertising had "already [been] turned back on," defendant Lake replied that Stitch Fix had "turned TV back on" and expressly acknowledged that "TV is an important part of that portfolio." Later, she stated, "[W]e always knew that TV was an important component of [marketing], but I think having gone through this test and having really understood more granularly how TV impacts, I think we feel like it's a really important part of the portfolio and you'll continue to see us invest there."

36.     The same day, the *Wall Street Journal* published an article titled "Fashion Emergency at Stitch Fix," in which it stated, in relevant part:

When Stitch Fix , a subscription fashion service, had its initial public offering last November, investors were skeptical. How many people would continue to pay for constant wardrobe updates?

In its first quarters as a public company, Stitch Fix defied the skeptics and posted consistent growth, raising hopes that it could succeed where other subscription services have failed. The stock had gained 73% this year through Monday's close. Monday's fiscal fourth-quarter results show that the bullish thesis may be coming apart at the seams. . . .

[B]ut Stitch Fix's stagnation with its core customer—American women—is a red flag. If it misses again, investors will have good reason to believe it is going the way of Blue Apron Holdings , Birchbox, and other subscription services that soared and then lost their novelty.

37.     On October 2, 2018, William Blair discussed the sharp deceleration in the growth of its active clients and the Company's lower-than-expected 2019 revenue and earnings guidance, stating in relevant part:

**Greater-Than-Expected Deceleration of Active Clients Overshadows Plans to Launch Internationally**

What You Need to Know

- Active clients grew about 25% year-over-year to roughly 2.7 million. Sequential net adds of roughly 54,000 was lower than the Street estimate of roughly 128,000.
- Revenue slightly missed the Street estimate by less than 1%. Gross profit and EBITDA beat the Street by 2% and 13%, respectively.
- First quarter 2019 guidance was issued below the Street for both revenue and EBITDA.
- Initial fiscal 2019 guidance bracketed the Street for revenue and was below the Street for EBITDA. . . .
- The company announced plans to launch Women's and Men's offerings in the United Kingdom by the end of fiscal 2019.

Stock Thoughts. **Stitch Fix shares are down about 20% in the aftermarket, likely due to greater-than-expected deceleration on active clients and revenue, as well as lower-than-expected EBITDA guidance for fiscal 2019.**

38.     On this news, the Company's share price fell $15.69 per share, more than 35%, to close at $31.58 per share on October 2, 2018, on unusually high trading volume.

## CLASS ACTION ALLEGATIONS

39.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Stitch Fix securities between June 8, 2018 and October 1, 2018, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which

1    Defendants have or had a controlling interest.

2        40.    The members of the Class are so numerous that joinder of all members is

3    impracticable.  Throughout the Class Period, Stitch Fix's common shares actively traded on the

4    NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can

5    only be ascertained through appropriate discovery, Plaintiff believes that there are at least

6    hundreds or thousands of members in the proposed Class.  Millions of Stitch Fix common stock

7    were traded publicly during the Class Period on the NASDAQ.  Record owners and other

8    members of the Class may be identified from records maintained by Stitch Fix or its transfer agent

9    and may be notified of the pendency of this action by mail, using the form of notice similar to that

10   customarily used in securities class actions.

11       41.    Plaintiff's claims are typical of the claims of the members of the Class as all

12   members of the Class are similarly affected by Defendants' wrongful conduct in violation of

13   federal law that is complained of herein.

14       42.    Plaintiff will fairly and adequately protect the interests of the members of the Class

15   and has retained counsel competent and experienced in class and securities litigation.

16       43.    Common questions of law and fact exist as to all members of the Class and

17   predominate over any questions solely affecting individual members of the Class.  Among the

18   questions of law and fact common to the Class are:

19       (a)    whether the federal securities laws were violated by Defendants' acts as alleged

20   herein;

21       (b)    whether statements made by Defendants to the investing public during the Class

22   Period omitted and/or misrepresented material facts about the business, operations, and prospects

23   of Stitch Fix; and

24

25       (c)    to what extent the members of the Class have sustained damages and the proper

26   measure of damages.

27       44.    A class action is superior to all other available methods for the fair and efficient

28   adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the

damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

45.    The market for Stitch Fix's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Stitch Fix's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Stitch Fix's securities relying upon the integrity of the market price of the Company's securities and market information relating to Stitch Fix, and have been damaged thereby.

46.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Stitch Fix's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Stitch Fix's business, operations, and prospects as alleged herein.

47.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Stitch Fix's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus

1   causing the damages complained of herein when the truth was revealed.

2                               **LOSS CAUSATION**

3          48.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused

4   the economic loss suffered by Plaintiff and the Class.

5          49.    During the Class Period, Plaintiff and the Class purchased Stitch Fix's securities at

6   artificially inflated prices and were damaged thereby.   The price of the Company's securities

7   significantly declined when the misrepresentations made to the market, and/or the information

8   alleged herein to have been concealed from the market, and/or the effects thereof, were revealed,

9   causing investors' losses.

10                            **SCIENTER ALLEGATIONS**

11         50.    As alleged herein, Defendants acted with scienter since Defendants knew that the

12  public documents and statements issued or disseminated in the name of the Company were

13  materially false and/or misleading; knew that such statements or documents would be issued or

14  disseminated to the investing public; and knowingly and substantially participated or acquiesced

15  in the issuance or dissemination of such statements or documents as primary violations of the

16  federal securities laws.   As set forth elsewhere herein in detail, the Individual Defendants, by

17  virtue of their receipt of information reflecting the true facts regarding Stitch Fix, their control

18  over, and/or receipt and/or modification of Stitch Fix's allegedly materially misleading

19  misstatements and/or their associations with the Company which made them privy to confidential

20  proprietary information concerning Stitch Fix, participated in the fraudulent scheme alleged

21  herein.

22              **APPLICABILITY OF PRESUMPTION OF RELIANCE**
                **(FRAUD-ON-THE-MARKET DOCTRINE)**
23

24         51.    The market for Stitch Fix's securities was open, well-developed and efficient at all

25  relevant times.   As a result of the materially false and/or misleading statements and/or failures to

    disclose, Stitch Fix's securities traded at artificially inflated prices during the Class Period.   On
26
    September 17, 2018, the Company's share price closed at a Class Period high of $51.19 per share.
27
    Plaintiff and other members of the Class purchased or otherwise acquired the Company's
28

1  securities relying upon the integrity of the market price of Stitch Fix's securities and market
2  information relating to Stitch Fix, and have been damaged thereby.

3      52.    During the Class Period, the artificial inflation of Stitch Fix's shares was caused by
4  the material misrepresentations and/or omissions particularized in this Complaint causing the
5  damages sustained by Plaintiff and other members of the Class.  As described herein, during the
6  Class Period, Defendants made or caused to be made a series of materially false and/or misleading
7  statements about Stitch Fix's business, prospects, and operations.  These material misstatements
8  and/or omissions created an unrealistically positive assessment of Stitch Fix and its business,
9  operations, and prospects, thus causing the price of the Company's securities to be artificially
10 inflated at all relevant times, and when disclosed, negatively affected the value of the Company
11 shares.  Defendants' materially false and/or misleading statements during the Class Period resulted
12 in Plaintiff and other members of the Class purchasing the Company's securities at such
13 artificially inflated prices, and each of them has been damaged as a result.

14     53.    At all relevant times, the market for Stitch Fix's securities was an efficient market
15 for the following reasons, among others:

16     (a)    Stitch Fix shares met the requirements for listing, and was listed and actively traded
17 on the NASDAQ, a highly efficient and automated market;

18     (b)    As a regulated issuer, Stitch Fix filed periodic public reports with the SEC and/or
19 the NASDAQ;

20     (c)    Stitch Fix regularly communicated with public investors via established market
21 communication mechanisms, including through regular dissemination of press releases on the
22 national circuits of major newswire services and through other wide-ranging public disclosures,
23 such as communications with the financial press and other similar reporting services; and/or

24     (d)    Stitch Fix was followed by securities analysts employed by brokerage firms who
25 wrote reports about the Company, and these reports were distributed to the sales force and certain
26 customers of their respective brokerage firms.  Each of these reports was publicly available and
27 entered the public marketplace.

28     54.    As a result of the foregoing, the market for Stitch Fix's securities promptly digested

current information regarding Stitch Fix from all publicly available sources and reflected such information in Stitch Fix's share price. Under these circumstances, all purchasers of Stitch Fix's securities during the Class Period suffered similar injury through their purchase of Stitch Fix's securities at artificially inflated prices and a presumption of reliance applies.

55.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

56.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Stitch Fix who knew that the statement was false when made.

**FIRST CLAIM**
**Violation of Section 10(b) of The Exchange Act and**
**Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

57.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

58.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Stitch Fix's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

59.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Stitch Fix's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

60.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Stitch Fix's financial well-being and prospects, as specified herein.

61.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Stitch Fix's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Stitch Fix and its business operations and future prospects in light

1  of the circumstances under which they were made, not misleading, as set forth more particularly

2  herein, and engaged in transactions, practices and a course of business which operated as a fraud

3  and deceit upon the purchasers of the Company's securities during the Class Period.

4       62.    Each of the Individual Defendants' primary liability and controlling person liability

5  arises from the following facts: (i) the Individual Defendants were high-level executives and/or

6  directors at the Company during the Class Period and members of the Company's management

7  team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and

8  activities as a senior officer and/or director of the Company, was privy to and participated in the

9  creation, development and reporting of the Company's internal budgets, plans, projections and/or

10 reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the

11 other defendants and was advised of, and had access to, other members of the Company's

12 management team, internal reports and other data and information about the Company's finances,

13 operations, and sales at all relevant times; and (iv) each of these defendants was aware of the

14 Company's dissemination of information to the investing public which they knew and/or

15 recklessly disregarded was materially false and misleading.

16      63.    Defendants had actual knowledge of the misrepresentations and/or omissions of

17 material facts set forth herein, or acted with reckless disregard for the truth in that they failed to

18 ascertain and to disclose such facts, even though such facts were available to them. Such

19 defendants' material misrepresentations and/or omissions were done knowingly or recklessly and

20 for the purpose and effect of concealing Stitch Fix's financial well-being and prospects from the

21 investing public and supporting the artificially inflated price of its securities.  As demonstrated by

22 Defendants' overstatements and/or misstatements of the Company's business, operations, financial

23 well-being, and prospects throughout the Class Period, Defendants, if they did not have actual

24 knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain

25 such knowledge by deliberately refraining from taking those steps necessary to discover whether

26 those statements were false or misleading.

27      64.    As a result of the dissemination of the materially false and/or misleading

28 information and/or failure to disclose material facts, as set forth above, the market price of Stitch

1   Fix's securities was artificially inflated during the Class Period.  In ignorance of the fact that

2   market prices of the Company's securities were artificially inflated, and relying directly or

3   indirectly on the false and misleading statements made by Defendants, or upon the integrity of the

4   market in which the securities trades, and/or in the absence of material adverse information that

5   was known to or recklessly disregarded by Defendants, but not disclosed in public statements by

6   Defendants during the Class Period, Plaintiff and the other members of the Class acquired Stitch

7   Fix's securities during the Class Period at artificially high prices and were damaged thereby.

8        65.   At the time of said misrepresentations and/or omissions, Plaintiff and other

9   members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff

10  and the other members of the Class and the marketplace known the truth regarding the problems

11  that Stitch Fix was experiencing, which were not disclosed by Defendants, Plaintiff and other

12  members of the Class would not have purchased or otherwise acquired their Stitch Fix securities,

13  or, if they had acquired such securities during the Class Period, they would not have done so at the

14  artificially inflated prices which they paid.

15       66.   By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act

16  and Rule 10b-5 promulgated thereunder.

17       67.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the

18  other members of the Class suffered damages in connection with their respective purchases and

19  sales of the Company's securities during the Class Period.

20                              **SECOND CLAIM**
                    **Violation of Section 20(a) of The Exchange Act**
21                       **Against the Individual Defendants**

22       68.   Plaintiff repeats and re-alleges each and every allegation contained above as if fully

23  set forth herein.

24       69.   Individual Defendants acted as controlling persons of Stitch Fix within the meaning

25  of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and

26  their ownership and contractual rights, participation in, and/or awareness of the Company's

27  operations and intimate knowledge of the false financial statements filed by the Company with the

28  SEC and disseminated to the investing public, Individual Defendants had the power to influence

and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

70.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

71.     As set forth above, Stitch Fix and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: November 16, 2018

**GLANCY PRONGAY & MURRAY LLP**


By:  *s/ Robert V. Prongay*
Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email:  rprongay@glancylaw.com

*Attorneys for Plaintiff*

**SWORN CERTIFICATION OF PLAINTIFF**

**STITCH FIX, INC.  SECURITIES LITIGATION**

I, Frederic San Giorgi individually, and/or in my capacity as trustee and/or principal for accounts listed on Schedule A, certify that:

1.     I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.     I did not purchase the Stitch Fix, Inc.  securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.     I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.     My transactions in Stitch Fix, Inc.  securities during the Class Period set forth in the Complaint are as follows:

       (See attached transactions)

5.     I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6.     I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

11/9/2018
_____
       Date

DocuSigned by:

*Frederic San Giorgi*
FA37CCF14BA143D...

                                            Frederic San Giorgi

**Frederic San Giorgi's Transactions in Stitch Fix, Inc. (SFIX)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 9/12/2018 | Bought | 22 | $45.1382 |
| 9/20/2018 | Bought | 25 | $41.5100 |
| 10/8/2018 | Bought | 10 | $25.8901 |